L. C. BAGLEY, Trustee, Appellant, v. D. W. BATES, Superintendent of Banking, Appellee.

No. 43009.

JUNE 21, 1935.

C. S. White, Genung & Genung, and Bennett Cullison, for appellant.

J. B. Ryan, Leonard L. Ryan and Graham & Graham, for appellee.

MITCHELL, J.—L. C. Bagley, as trustee in bankruptcy of the estate of H. M. Bilharz, commenced an action in equity against D. W. Bates, superintendent of banking and receiver of the Farmers State Bank of Audubon, Iowa, alleging that, within four months prior to the filing of the petition in bankruptcy, the said H. M. Bilharz (H. M. Bilharz being one and the same person as Harriet M. Bilharz), while insolvent and indebted to the Farmers State Bank of Audubon, and other creditors of the same class, upon unsecured indebtedness, provable in bankruptcy, transferred to the superintendent of banking and manager of the Farmers State Bank certain real estate, described in detail. in the petition, and consisting of 200 acres of land in Audubon county, Iowa; that the property so transferred is in the hands of the receiver of the Farmers State Bank of Audubon, Iowa, and that said transfer would enable the said bank and the receiver thereof to obtain payment of a greater percentage of its debts than other creditors of the same class; that, at the time of the making and accepting of said transfer, the superintendent of banking, acting as receiver of the Farmers State Bank of Audubon, knew, or had reasonable cause to believe that preference was intended within the meaning of the provisions of the acts of Congress relating to bankruptcy, and that L. C. Bagley, as trustee in bankruptcy for H. M. Bilharz, had insufficient funds in his hands to pay in full the debts of the said bankrupt. To this petition was filed what in effect was a general denial. The trial court dismissed the petition, and L. C. Bagley, as trustee in bankruptcy, being dissatisfied with the decision, has appealed to this court.

Harriet M. Bilharz was the cashier of the Farmers State Bank of Audubon, Iowa. Her brother was the vice president. In fact, the bank was known in the community as the Bilharz bank. For years this family had operated the bank, and successfully as far as the record shows, up until February of 1933. It then developed that for some little time Harriet M. Bilharz as cashier of the bank had been receiving deposits and issuing certificates of deposit for those received, and entering them upon the savings account books of the depositors, but that these liabilities as deposits were not set up on the books of the bank. There is no claim made, and certainly no evidence in the record, that Harriet M. Bilharz took one penny of the money from the bank. The bank did not lose anything by the transaction, but of course the books of the bank did not show the true situation of the bank's condition. The amount reached the large sum of $76,000. The Bilharzes called in their family friend and attorney, Mr. George Cosson of Des Moines, and, after going over the affairs of the bank with him, it was decided the advisable thing to do was for Harriet M. Bilharz to deed to the bank certain real estate which she had, in the hope of bringing the bank's books into actual balance as to assets and liabilities. Mr. Cosson, as attorney for the Bilharzes, talked the matter over with the superintendent of banking, and also informed him that Harriet M. Bilharz was about to transfer this real estate to the bank.

On February 1, 1933, the superintendent of banking took charge under Senate File No. 111. Three days later, February 3, 1933, Harriet M. Bilharz transferred to the Farmers State Bank of Audubon, Iowa, and L. A. Andrew, then superintendent of banking and manager of said bank, or his successor in office, the real estate which is the subject of this action. L. C. Bagley, the appellant, is the duly appointed trustee in bankruptcy of the estate of Harriet M. Bilharz. This action was brought, alleging that the transfer was a preferential one, made within the four-month period, and praying that same be set aside.

The statute which authorizes a proceeding of this character is found in 11 USCA, section 96, subdivision (b), and is as follows:

"If a bankrupt shall have procured or suffered a judgment to be entered against him in favor of any person or have made a transfer of any of his property, and if, at the time of the transfer, or of the entry of the judgment, or of the recording or registering of the transfer if by law recording or registering thereof is required, and

being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the judgment or transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person. And for the purpose of such recovery any court of bankruptcy, as hereinbefore defined, and any State court which would have had jurisdiction if bankruptcy had not intervened, shall have concurrent jurisdiction."

In Remington on Bankruptcy (3d Ed.) we find the following requirements set out which a trustee in bankruptcy must show in order to establish a prima facie case:

"First Element of a Preference—Depletion of insolvent fund. —Some portion of the debtor's property must have been appropriated by the transaction, and the insolvent estate thereby diminished. Preference implies appropriation of assets and depletion of the trust fund thereby." Section 1630, p. 400.

"Second Element of a Preference—The claim upon which the preferential transfer is made must have been the claim of a creditor of the bankrupt—Preference implies advantage accruing by the transfer to a 'creditor.'" Section 1671, p. 438.

"Third Element of a Preference—Creditor's claim must have been pre-existing debt—The creditor's claim must have a debt—a pre-existing debt; and the transfer will not amount to a preference if made contemporaneously with (or before) the rising of the claim. Preference implies preceding credit." Section 1694, p. 456.

"Fourth Element of a Preference—The debtor must have a 'transfer' of property, or have 'procured' or 'suffered' the creditor to obtain a judgment operating to appropriate property of the debtor. Preference implies voluntary action on the debtor's part, and a change of title thereby, of the kind known as 'transfer,' or a seizure by legal proceedings with the debtor's assent or acquiescence." Section 1718, p. 476.

"Fifth Element of a Preference—Where the preference is by way of a transfer, the transfer must have been made by the transferor to satisfy a debt in whole or in part and the property must have been sought to be applied on a debt. Preference, by way of

transfer, implies an intent of the transferor to apply the property on a debt, or obligation." Section 1735, p. 497.

"Sixth Element of a Preference—The debtor must have been insolvent at the time of the transfer or other voluntary appropriation of property. Preference implies insolvency of the debtor. Of course there can be no preference among creditors if the debtor is solvent, for then he can pay all his debts in full." Section 1739, p. 503.

"Seventh Element of a Preference—Transfer or Recording within Four Months before Filing of Petition.—The transfer or other appropriation of property, or, when the transfer is such that the law requires the recording of it to make it effective (against creditors) then the recording of the transfer, must have been made within four months before the filing of the bankruptcy petition, or after the filing of the petition and before the adjudication." Section 1772, p. 527.

"Eighth Element of a Preference—Transfer must give creditor greater percentage than other of same class.—The effect of the transfer or other appropriation of property must have been to give the creditor receiving it a greater percentage of his claim than some other creditor of the same class in the order of priority. Preference implies advantage of one creditor over others of the same class." Section 1807, p. 589.

"Ninth Additional Element Requisite to Make Preference Voidable—Creditor must have had 'reasonable cause to believe' preference 'would be effected.'—The additional element requisite to make a preference voidable is that the creditor (or his agent) receiving the preference must have received it under such circumstances as naturally would have caused the ordinary person, had he been the creditor receiving the preference, to have believed that thereby a preference would be effected." Section 1819, p. 606.

The appellees claim that there has been failure on the part of the appellant to prove several of the necessary elements before appellant is entitled to succeed in setting aside the transfer as a preferential one. We find it necessary to consider only one of the alleged failures on the part of the appellant. That is the fact that it was essential to his recovery that he prove the transfer resulted in the payment of indebtedness. In other words, that at the time the transfer was made by Harriet M. Bilharz it was made to the bank or the superintendent of banking who was acting for the bank,

in payment of indebtedness at that time owed by Harriet M. Bilharz to the Farmers State Bank of Audubon, Iowa. This particular section of the Bankruptcy act refers only to payments made on indebtedness. It has nothing whatever to do with gifts, transfers made in fraud of creditors, concealment of property, or anything of that nature. We are not confronted with questions involving such offenses. We are dealing only with the suit brought to set aside a voidable preference, the very basis of which is that the claim of a creditor has been paid in whole or in part, and where the payment so made results in the transferee receiving a larger percentage of his debt than he would have otherwise received if the property had all been distributed at that time.

The record shows that Harriet M. Bilharz was indebted to the bank on a promissory note in the amount of $7,500, but it is not the claim of the appellant that this transfer was made in payment of that obligation. It is not denied that the $7,500 obligation remained after the transfer of the property of Harriet M. Bilharz to the bank. In fact, it remained at all times, even during the receivership of the bank. But it is the claim of the appellant that Harriet M. Bilharz was indebted to the bank in the amount of approximately $75,000, which is termed "shortage"; this sum being the amount of money which was deposited at the bank and for which certificates of deposit were issued, the amounts recorded upon the savings books of the depositors, but which were never set up on the books of the bank as a liability of the bank. The appellee claims that this amount of $75,000, which was not properly entered upon the books of the bank, was not the indebtedness of Harriet M. Bilharz, and that at the time she made the transfer it was not made for the purpose of paying any indebtedness which she owed to the bank. There is not one word of evidence in this record that would justify anyone in coming to the conclusion that Harriet M. Bilharz ever received one single penny of this amount of approximately $75,000. Nor did the bank lose by this transaction. All that really occurred was that the books of the bank did not show the proper condition of the bank. These certificates and savings accounts were liabilities of the bank. The money received from these people was in the bank. It was used in taking out of the assets of the bank notes which the banking department asked be withdrawn from the active assets of the bank.

C. E. Foote took charge for the banking department three days before the deeds were made and testified as follows:

"H. M. Bilharz's indebtedness to the bank was a promissory note for $7,500.00. I continued in the bank from February 1st until August 1st, and then I helped the receiver for a few days after that, that is, the examiner in charge. During the time I was with the bank, the $7,500.00 note of H. M. Bilharz has never been paid. On February 3, 1933, there was no evidence of the indebtedness of H. M. Bilharz to the bank other than $7,500.00. The $7,500.00 note has never been paid, as long as I was there it was not. In the early part of February when I arrived, we talked over trying to get what they call a depositor's agreement and reopen the bank. This is about the same time the deeds were taken."

N. J. Greteman, another employee of the state banking department, who made an investigation of the condition of the bank the 1st of February, 1933, testified as follows:

"I did not have any knowledge on the first, second, or third of February, 1933, of any indebtedness owing by H. M. Bilharz other than the $7,500.00 owing and shown on the books of the bank.

"The transaction I referred to, of the 50 or $70,000.00 was merely a bookkeeping transaction. In so far as I know, the bank did not lose a cent by these transactions. We were informed that the certificates of deposit that had been put back on the books, had been issued to the bank customers. The only part of the transaction which was not completed was, that the certificates of deposit had not been posted in the section of the deposit record. When these certificates of deposit were listed on the register, that threw the books out of balance, and it was necessary to make corresponding entries in the loss and gain account to balance the books. The usual procedure is that if there is a note in the bank and the department decides that the note cannot be carried in the bank, that note is charged to surplus or undivided profits and taken out. It still remains the property of the bank. It is carried in what is called non-ledger assets and is owned by the bank.

"I did not see the certificates because they were in the hands of the customers; as they were their property and probably signed by the officers and they were claims, of course, and it would not change the liability of the bank. I do not know of any indebtedness by H. M. Bilharz to the bank other than the $7,500.00."

And Mr. Foote, the man who secured the deeds and handled the transaction covering the transfer of this property from H. M. Bilharz to the bank, testified as follows:

"If the bank had been able to reopen, the additional real estate, such as was conveyed to the bank, could be used for the purpose of balancing the loss and gain account. The question of how much H. M. Bilharz owed the bank was not discussed with her at all, in so far as these conveyances and execution and delivery of them were concerned. The conveyances of these deeds had nothing whatever to do with the indebtedness actually owed by H. M. Bilharz,• in so far as I know."

There is no evidence in the record that controverts the testimony above quoted. Harriet M. Bilharz was not indebted to the bank for these $75,000. She no doubt had violated the law of this state in regard to false reports by a bank official, but we are not confronted with that question. Before the appellant in this case can recover the relief prayed for, he was bound to show that the transfer resulted in the payment of indebtedness due and owing by Harriet M. Bilharz to the bank. This the trustee in bankruptcy has failed to do. The only obligation which Harriet M. Bilharz owed to the bank, to wit, the $7,500 note, no one claims was paid by the transfer of this property to the bank. That obligation remained, and, as far as the record shows, it still remains.

Having failed to prove one of the essential elements of his case, that the transfer was made as a payment on indebtedness owing by Harriet M. Bilharz to the bank, it is not necessary for us to discuss the other questions in the case, as this is fatal to appellant's case, and the judgment and decree of the lower court must be, and it is hereby, affirmed.

ANDERSON, C. J., and ALBERT, POWERS, HAMILTON, RICHARDS, and PARSONS, JJ., concur.